McCanless, Commissioner of Finance and Taxation, *v.*
Klein.

(*Nashville,* December Term, 1944.)

Opinion filed June 30, 1945.

As modified on rehearing August 2, 1945.

Levine & Levine, of Nashville, and Harry U. Scruggs, of Memphis, for petitioner.

Roy H. Beeler, Attorney General, and Ernest F. Smith, Assistant Attorney General, for respondent Commissioner. (Plaintiff in error)

Mr. Justice Chambliss delivered the opinion of the Court.

Klein is a wholesale liquor dealer in Memphis. His license was suspended for a period of six months by the Commissioner of Finance and Taxation for violation of a regulation promulgated by the commissioner, the pertinent part of which reads as follows:

"From and after the effective date of this regulation no wholesale liquor distributor shall add an additional brand to his stock without first securing the written approval of the Commissioner."

On the hearing before the commissioner, in response to an inquiry, counsel for Klein stated that no question was made that this regulation (Number 36) had been duly promulgated prior to the date of the alleged violation and was at that date in effect, and counsel added: "For the purpose of the record, we are not raising any question as to the validity of this regulation."

It was shown beyond dispute that Klein had received in stock and distributed to retailers a large number of cases of whiskey of a brand known as Silver Flash "without first securing the written approval of the commissioner;" and there was evidence that he continued to receive and distribute cases of this brand after notice had been served on him that he was violating this regulation.

The defense offered and attempted to be made before the commissioner was that Klein had acted in good faith, under a misunderstanding. After a full hearing, including argument, the commissioner, on October 20th, 1944, issued the order, as aforesaid, suspending for six months the license as of November 4th, 1944.

Thereupon Klein filed his petition for *certiorari* and *supersedeas* in the Third Circuit Court of Davidson County praying that the order of the commissioner be held null and void and reversed and, after a hearing upon the record of the proceedings before the commissioner, the circuit court so adjudged. The commissioner appealed.

In his petition to the circuit court Klein, for the first time and in spite of his admissions before the commissioner, sitting as a trial court, as hereinabove recited, challenged the validity of this regulation as unauthorized by law and in violation of the state and federal Constitutions, in that (1) the statute delegating to the com-

missioner authority to promulgate the regulation was an attempt to delegate power to legislate, and (2) the regulation in effect created a monopoly in permitting a dealer in a county to handle exclusively a certain brand. It was also asserted that the record showed petitioner to have been acting in good faith, and it was further alleged that the commissioner erred in permitting an amendment to be introduced and giving consideration to allegations therein made of an independent violation with respect to another brand, of which charge adequate notice had not been given petitioner. And complaint was also made that the order, effective as of November 4th, 1944, for six months extended the suspension beyond the date of expiration of the license held by petitioner for the year 1944.

The learned trial judge, as appears from his opinion and judgment in the record, found that petitioner Klein had added to his stock and offered to the trade this brand without having first secured the permission of the Commissioner. He found that the amendment charging another violation was "ill advised because the time between the notice and the hearing was insufficient," but that "the commissioner very properly dismissed said charge."

However, he held that, while the commissioner was authorized by Chapter 49 of the Pub. Acts of 1939 to promulgate "all reasonable rules and regulations for the carrying out of the liquor industry by those engaged therein, as far as they are reasonable and conducive to the public health, welfare or morals . . . that a rule is unreasonable and void that is issued and promulgated for the avowed purpose, as stated by the commissioner, for stabilizing the liquor industry." The court thereupon held and adjudged that the regulation in question "is not such a regulation as would be conducive to the

public health, welfare and morals, but on the contrary, is such a regulation as would tend to create monopolies in violation of the Constitution and statutes of the State of Tennessee relating to monopolies, and is arbitrary and unreasonable, and is so found by the court to be void.''

The motion of the commissioner for a new trial challenged specifically as erroneous this holding that the regulation was invalid and that it would tend to create monopolies in violation of the Constitution; that the court erred in not holding the petitioner estopped by his admission made for the record on the hearing before the commissioner of the validity of this regulation; and, generally, that the Court erred in sustaining the petition and superseding the order of suspension of the commissioner. Assignments of error in this Court are to the same effect.

On the brief and argument of petitioner in this Court the preliminary question is made that the case has now become moot and that the appeal of the commissioner should be on this ground dismissed.

In the case of *State ex rel.* v. *Bush,* 141 Tenn. 229, 208 S. W. 607, this Court approved the rule laid down by the Supreme Court of the United States and text book authorities therein cited, that when pending appeal the case has become moot, that is, when the rights in contest have expired by lapse of term or time, the appeal will be dismissed, but in *State ex rel.* v. *Trotter,* 153 Tenn. 30, 281 S. W. 925, while recognizing this general rule, an exception was noted where the constitutionality of a statute was involved. After referring to *State ex rel.* v. *Bush,* wherein 2 R. C. L. 169, and 3 C. J. 360, were quoted, it was said (153 Tenn. at page 34, 281 S. W. at page 926): ''However, as before stated, the constitutionality of the

act was challenged . . . and in this situation it is proper that this court should pass upon the constitutionality of the act in this case." In a note in 3 C. J. on page 359, it is said that there are well-recognized exceptions to the general rule that cases which pending litigation or appeal have become moot will be dismissed as such. Cases involving interests of a public character are among these exceptions. See, also, 4 C. J. S., Appeal and Error, Sec. 40. Where the validity of asserted powers of a governmental agency has been challenged in a court proceeding and the question may again arise in the course of administration, the court will not decline to pass on the question merely because the time involved in the particular order challenged has expired. *Southern Pac. Terminal Co.* v. *Interstate Commerce Commission,* 219 U. S. 498, 31 S. Ct. 279, 55 L. Ed. 310.

In the case cited above the validity of an order of the Interstate Commerce Commission fixing a rate was involved and the period for which the rate was fixed had expired.

So, 1 C. J. S., Actions, Sec. 17, pp. 1017, 1018, states the rule to be that a case may become moot where by a court decision, acts of parties, or other causes occurring after the commencement of the action the case has lost its controversial character, "unless it is one of great public importance, as where it involves a determination of public rights or interests under conditions which may be repeated at any time." *Matter of Cuddeback,* 3 App. Div. 103, 39 N. Y. S., 388, 389, is cited as another case illustrating the exception, where the question was of such importance that the court felt it proper to decide it, "though it has ceased to be of practical interest to the parties."

■ It thus appears that while the rule calling for dismissal of cases which become moot pending appeal is applicable when the issues for determination affect only rights and claims personal to the parties, an exception is well recognized when interests of a public character and of importance in the administration of justice generally are involved.

■ The circuit judge, as has been seen, held the regulation in question unconstitutional and void and on this ground sustained the petition for *certiorari* and issued the *supersedeas*. This is the issue presented to this Court on this appeal. As to this determinative issue, the exception above noted clearly applies. Interests of a public character are involved. The validity of asserted powers of a governmental agency is challenged and has been denied by the court below. The question is one likely to arise again in the course of administration of this governmental agency. It results that it becomes necessary for this Court to pass upon it, and this is so despite the admission of counsel for petitioner on the trial of the authority of the commissioner and the constitutionality of the regulation. Conceding that he may bind himself by such waiver, the rights and interests of the public are not thereby affected and this constitutional question is open for our consideration.

We are constrained to differ with the learned circuit judge, who holds this regulation, directed exclusively to the conduct of the liquor business, to be unreasonable, not within the police powers of the State, not conducive to the public health, welfare and morals, and tending to create monopolies in violation of the Constitution and statutes, and, therefore, void.

■■ It is difficult to conceive of a regulation of the sale and distribution of intoxicating liquor which could

be said to be beyond the police powers of the State. Since the power of the State to prohibit such sales al together is beyond question, no provision for its regulation is beyond the state's power. The holding of the circuit judge apparently fails to recognize that, as we said in *Wright* v. *State*, 171 Tenn. 628, 106 S. W. (2d) 866, quoted and re-affirmed in *Huffer* v. *State*, 178 Tenn. 644, 646, 162 S. W. (2d) 381, 382, "A license to sell liquor is not a contract by right of property but is merely a temporary permit to do that which would otherwise be unlawful." Or, as expressed in *Henderson* v. *Grundy County Beer Committee*, 176 Tenn. 397, at page 402, 141 S. W. (2d) 901, at page 903, such a license "is in the nature of a mere permit which creates no vested or property rights, and the traffic is at all times subject to the control of the State, . . . in the exercise of the police power."

Ordinary rules of construction of statutes and ordinances with respect to their reasonableness do not strictly apply. The legislature has unlimited powers of regulation and restriction of the liquor traffic and may delegate these powers, as has been done to the commissioner. His exercise of such delegated discretion will not be lightly interfered with by the courts. It is a commonly accepted practice for the legislature, through its delegated agencies of government to establish restrictions upon sales of liquor as to territory, population, location, number of dealers, hours, and details of all kinds; all of these for the purpose of strict surveillance and control in order to minimize the evils inherent in the traffic and insure the collection of tax thereon. In the recent case of *McCanless, Commissioner,* v. *State ex rel. Hamm*, 181 Tenn. 308, 181 S. W. (2d) 154, 156, 153 A. L. R. 832, we said, "It is everywhere now accepted that

the business of dealing in intoxicating liquors is subject to the most stringent regulation as to places where it is conducted, persons who shall conduct it, and as to whether it shall be conducted at all. *State ex rel. Saperstein* v. *Bass, Mayor,* 177 Tenn. 609, 152 S. W. (2d) 236; *State ex rel. Major* v. *Cummings, Mayor,* 178 Tenn. 378, 158 S. W. (2d) 713, 139 A. L. R. 837.

Nor do we find justification for the holding, which appears to be the ultimate ground advanced by the circuit judge, that this regulation tends to create a monopoly. We find no provision in the regulation which limits the right to sell a particular brand of whiskey to a single or certain liquor dealer, as the holding appears to assume. The regulation requires registration of all brands sold by a dealer and forbids sales or transfers to another dealer of any brand without such registration and the obtaining of a permit therefor. It is easy to conceive that such provisions will aid in keeping track of the distribution of liquors, tracing responsibility when necessary, for sales, and collecting the incidental tax charges. It is apparent that this regulation provides an additional means of identification, so essential to efficient administration.

The court appears to have been impressed by a statement made by the commissioner in disposing of the case that this particular provision had for its purpose the ''stabilization of the trade by prohibiting the arbitrary changing of brands and distillers from one distiller to another.'' To stabilize is to keep steady, fixed, as distinguished from fluctuating, shifting. No tendency to exact a monopoly of supply or sale appears to be implied. We can readily perceive how such a practice would greatly embarrass and impede efforts of the supervising department to keep track of sales and trace

their source.  Only by registration of these shiftings could records be kept by the commissioner, essential to proper oversight of the traffic.  Moreover, even if ''stabilization'' should be understood as referring to economic or financial steadying, not the word's primary meaning, such an effect is in the interest of the public.  Demoralization of this business due to cut throat competition, multiplication of dealers, etc., reacts on the purchasing public and tends to encourage fraud and deceit.

The assignments challenging the holding of the circuit judge are sustained, his judgment reversed, the petition for *certiorari* and *supersedeas* dismissed and the case remanded for such further proceedings as may be lawful in enforcement of the orders of the Commissioner.